UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | Case No. 10-28882 |
| SK HAND TOOL CORPORATION, | ) | Hon. Eugene R. Wedoff |
| et al.,[1] | ) | (Jointly Administered ) |
| Debtors. | ) | |
| | ) | Hearing: Tues., Aug. 11, 2010 at 10:30 a.m. |

### FINAL FINANCING ORDER AUTHORIZING BORROWING WITH PRIORITY OVER ADMINISTRATIVE EXPENSES AND SECURED BY LIENS ON PROPERTY OF THE ESTATE PURSUANT TO SECTION 364(C) OF THE BANKRUPTCY CODE

**WHEREAS,** on June 29, 2010 (the "Petition Date"), SK Hand Tool Corporation ("SK"), MCC Business, Inc. ("MCC"); and Triat Industries, Inc. ("Triat"), as Debtors and debtors-in-possession (collectively, the "Debtors" or the "Borrowers") filed voluntary petitions for reorganization pursuant to chapter 11 of Title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Illinois (the "Court"); and

**WHEREAS,** the Debtors have moved the Court (the "Motion") for authorization, pursuant to Bankruptcy Code §§ 105(a), 363 and § 364(c), to ratify, reaffirm and adopt, as modified and supplemented by this Order, its pre-petition secured financing arrangement with, and obtain debtor-in-possession financing from, Webster Business Credit Corporation, ("Lender"), pursuant to the terms and conditions of (a) certain pre-petition agreements, including, without limitation, (i) Credit and Security Agreement, dated as of April 20, 2005, among the Borrowers and Lender individually and as agent for each other Lender Party, together with Exhibits and Schedules thereto, all as amended from time to time (collectively, the "Credit and Security Agreement"); (ii) Master Letter of Credit Agreement, dated as of April 20, 2005,

---

[1]    The Debtors consist of SK Hand Tool Corporation (FEIN 36-3255336); MCC Business, Inc. (FEIN 20-4481772); and Triat Industries, Inc. (FEIN 13-3514526).

made by Borrowers in favor of Lender; (iii) Mortgage and Security Agreement, dated April 20, 2005, in the amount of $14,932,000 between the Borrowers and Lender; (iv) Open-End Mortgage, Security Agreement, Assignment of Rents and Fixture Filing, dated April 20, 2005, between the Borrowers and Lender; (v) Trademark Security Agreement, dated as of April 20, 2005, made by the Borrowers in favor of Lender; and (vi) various other and further agreements in supplement thereto (collectively, the "Pre-Petition Agreements"), copies of which were annexed to the Motion as Group Exhibit "A"[2], pursuant to which, among other things, the Debtors granted to Lender liens, mortgages and security interests in substantially all assets of the Debtors (the "Pre-Petition Collateral"), (b) the budget annexed as Exhibit "1" hereto (the "Budget") and (c) this Order (collectively, the Pre-Petition Agreements, the Budget and this Order shall be referred to hereinafter as the "Financing Arrangement"); and

WHEREAS, an interim hearing with respect to the Application was held by the Court on July 1, 2010, at which hearing the Court entered an interim Order with respect to the Motion;

WHEREAS, a final hearing with respect to the Motion was held by the Court on August 11, 2010 at which all Objections to the relief requested by the Motion were either withdrawn or overruled (the "Final Hearing").

### THE COURT HEREBY FINDS AND DETERMINES THAT:

(a)    The Court has jurisdiction over this proceeding and the parties to the Application under §§ 157(b) and 1334 of title 28 of the United States Code. Consideration of the Application constitutes a core proceeding under 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364 and 552 of the Bankruptcy Code and Rules 4001(c)(1) and (c)(2) of the Federal Rules of Bankruptcy Procedure. Venue of the

---

[2]    Group Exhibit A was filed and served but is quite voluminous. Additional copies can be obtained through the Debtors' counsel.

NGEDOCS: 1729924.4

Debtors' cases and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

(b)    Need exists for the Debtors to obtain funds in order to fund these chapter 11 cases. If the Debtors do not have borrowing authority and are unable to make payments, when due, irreparable harm would occur to the Debtors' estates. The ability of the Debtors to finance their operations by borrowing to meet working capital and liquidity needs is essential to maintaining the Debtors' going concern value.

(c)    Lender and the PBGC (as such term is defined below) are willing to advance monies to the Debtors only upon the conditions contained in this Order.

(d)    The Debtors submit that they have attempted, but have been unable, to obtain sufficient levels of unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense pursuant to § 364(a) or (b) of the Bankruptcy Code necessary to maintain and conduct its business.

(e)    The Debtors are unable to obtain secured credit allowable only under Bankruptcy Code § 364(c)(1), except under the terms and conditions provided in this Order;

(f)    It is in the best interest of the Debtors' estates that they be allowed to finance their operations under the terms and conditions set forth herein, as such financing is necessary to prevent a disruption of its business and to permit the Debtors to attempt to achieve a successful reorganization or going concern sale of their assets.

(g)    The Debtors admit, without prejudice to the rights of the Official Committee of Unsecured Creditors (the "Committee") and third parties to challenge same on behalf of the Debtors or in their own right to the extent set forth below, that as of the Petition Date, in accordance with the Pre-Petition Agreements, (1) the Debtors were indebted to Lender,

3

without defense, counterclaim, recoupment or offset of any kind, in the aggregate amount of approximately $9.1 million in respect of loans, advances and other financial accommodations made by Lender to the Debtors in accordance with the Pre-Petition Agreements (the "Pre-Petition Obligations"), (2) prior to the Petition Date, the Debtors were in default under the terms of the Pre-Petition Agreements; and (3) the Pre-Petition Obligations were secured by valid, enforceable and properly perfected first priority liens on and security interests in the Pre-Petition Collateral.

(h)    The Debtors admit, without prejudice to the rights of the Committee and third parties to challenge same on behalf of the Debtors or in their own right to the extent set forth below, that as of the Petition Date, in accordance with 26 U.S.C. §§ 412 and 430, (1) the Debtors were indebted to the SK Hand Tool Pension Plan for Local Lodge No. 1356 (the "Pension Plan"), without defense, counterclaim, recoupment or offset of any kind, in the aggregate principal amount of approximately $2.5 million in respect of missed minimum funding contributions to the Pension Plan (including accruing interest thereon, the "Pre-Petition Pension Obligations"), (2) prior to the Petition Date, liens on the Pre-Petition Collateral securing the Pre-Petition Pension Obligations arose under 26 U.S.C. § 430(k), and (3) by virtue of Notices of Federal Lien filed by the Pension Benefit Guaranty Corporation (acting at all times herein on behalf of the Pension Plan, the "PBGC") prior to the Petition Date pursuant to its authority under 26 U.S.C. § 430(k)(5), the Pre-Petition Pension Obligations are secured by valid, enforceable and properly perfected first priority liens on and security interests in the Pre-Petition Collateral of SK and MCC, subject only to the liens and security interests of Lender.

4

### AND THE COURT HEREBY FINDS AND DETERMINES THAT

(i)     The credit and financial accommodations to be extended under the Financing Arrangement have been negotiated in good faith and at arm's length between the Debtors and Lender. Any credit extended, loans made and other financial accommodations extended to the Debtors by Lender shall be deemed to have been extended or made, as the case may be, in good faith within the meaning of § 364(e) of the Bankruptcy Code. As a result, Lender is entitled to the protection of Bankruptcy Code § 364(e).

(j)     Notice of the relief sought by the Application and the hearings with respect thereto, believed by the Debtors to be the best available notice under the circumstances, has been given pursuant to Bankruptcy Rule 4001(c) to counsel to the Committee, the Office of the U.S. Trustee, Lender, junior lenders Timothy T. Herrick, Leonard D. O'Connell and Scott Anderson (collectively, the "Junior Lenders"), the District Director of Internal Revenue, the United States Attorney, parties entitled to notice pursuant to Bankruptcy Rule 2002 and the PBGC, and no further notice of, or hearing on, the relief sought in the Application is required.

(k)     Good and sufficient cause exists for the issuance of this Order.

### NOW, THEREFORE, IT IS HEREBY ORDERED:

1.     The Debtors are hereby authorized and deemed to ratify and adopt, on a final basis, the Pre-Petition Agreements, including the validity and enforceability of the Pre-Petition Obligations to Lender incurred thereunder and the liens and security interests granted to Lender thereunder, subject to the rights of the Committee and third parties to challenge same on behalf of the Debtors or in their own right to the extent set forth below.

2.     The Debtors are hereby authorized to borrow funds from and incur debt to Lender pursuant to the terms and conditions of the Financing Arrangement, and use Lender's and

NGEDOCS: 1729924.4

PBGC's cash collateral, as such term is defined in Bankruptcy Code § 363(a) ("Cash Collateral"), in accordance with the Budget, but subject in all respects to the provisions of the Credit and Security Agreement, including, without limitation with respect to "Maximum Revolving Amount," "Total Credit Facility" and "Borrowing Base" (as such terms are defined in the Loan Agreement), from and after the date of this Order and to grant to Lender and PBGC the liens and security interests provided for under this Order. The Financing Arrangement is approved in all respects. Lender, PBGC and the Debtors may amend, modify, supplement and/or waive any provision of the Financing Arrangement and/or extend the term of the Financing Arrangement, (a) as may be agreed to by Lender, PBGC, Debtors and the Committee, without further order of the Court, provided that (i) such amendments, modifications, supplements and/or waivers do not materially alter the provisions of the Financing Arrangement, and (ii) the Debtors file with the Court prior written notice of such amendments, modifications, supplements, waivers and/or extensions, and serve such written notice upon the Noticed Parties (as such term is defined below), reasonably (but not more than three (3) business days) prior to the proposed effective date thereof, or (b) as may be agreed to by Lender, PBGC and Debtors, and authorized by further order of the Court, on written notice to the Noticed Parties.

3.      As adequate protection for any post-petition diminution in value of Lender's interests in the Pre-Petition Collateral, including without limitation that caused by the Debtors' use of the Pre-Petition Collateral and/or Cash Collateral and any payment of the Carve-Out, Lender is hereby granted a post-petition claim (the "Adequate Protection Claim") against the Debtors' estates.

4.      Any and all Liabilities, as such term is defined in the Pre-Petition Agreements, arising subsequent to the Petition Date (the "Post-Petition Obligations"), and the Adequate

Protection Claim (collectively with the Post-Petition Obligations, referred to herein as, the "Post-Petition Claim") shall have priority in payment over any other obligations now in existence or incurred hereafter by the Debtors, except for claims under the Carve Out, and over any and all administrative expenses or charges against property arising in the Debtors' bankruptcy cases, including without limitation those specified in Bankruptcy Code §§ 503(b), 506(c), 507(a), 507(b), 1113 or 1114; *provided however,* the Post-Petition Claim shall not be payable from avoidance actions brought by or on behalf of the Debtors pursuant to Bankruptcy Code §§ 544-550 and § 553.

5.    Pursuant to Bankruptcy Code §§ 362, 363(e) and 364(c), as security for the Post-Petition Claim, the Debtors are hereby authorized to and do grant to Lender a valid, binding, enforceable and automatically perfected first priority lien and/or security interest, subject only to liens existing as of the Petition Date that are valid, enforceable and not subject to avoidance by a trustee or the Committee under the Bankruptcy Code, in all of the Debtors' presently owned or hereafter acquired property and assets, whether such property and assets were acquired by the Debtors before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, and the proceeds and products thereof (collectively, the "Collateral") (to the extent acquired after the Petition Date, the "Post-Petition Collateral"), including without limitation (as such terms are defined in the Pre-Petition Agreements) (i) Receivables; (ii) Equipment;; (iii) General Intangibles (including customer lists and intellectual property), (iv) Inventory; (v) Contract Rights, (vi) Trademarks; (vii) real property; (viii) all books, records, writings, data bases, information and other property relating to, used or useful in connection with, or evidencing, embodying, incorporating or referring to any of the foregoing; (ix) all Equity Interests of each Subsidiary, (x) all other Collateral and Intellectual

7

Property secured by the Pre-Petition Agreements; and (x) proceeds and products of any of the foregoing. Notwithstanding anything in this Order to the contrary, neither the Collateral or the Post-Petition Collateral shall include avoidance actions brought by or on behalf of the Debtors pursuant to Bankruptcy Code §§ 544-550 and § 553.

6.     As adequate protection for any post-petition diminution in value of PBGC's interests in the Pre-Petition Collateral, including without limitation that caused by the Debtors' use of the Pre-Petition Collateral and/or Cash Collateral and any payment of the Carve-Out, PBGC, acting on behalf of the Pension Plan, is hereby granted a post-petition claim (the "PBGC Adequate Protection Claim", and collectively with the Pre-Petition Pension Obligations, the "Pension Obligations") against the Debtors' estates.

7.     The PBGC Adequate Protection Claim shall have priority in payment over any other obligations now in existence or incurred hereafter by the Debtors, except for claims under the Carve Out, and over any and all administrative expenses or charges against property arising in the Debtors' bankruptcy cases, including without limitation those specified in Bankruptcy Code §§ 503(b), 506(c), 507(a), 507(b), 1113 or 1114; *provided however,* the PBGC Adequate Protection Claim (a) shall be junior and subordinate to the Post-Petition Claim, and (b) shall not be payable from avoidance actions brought by or on behalf of the Debtors pursuant to Bankruptcy Code §§ 544-550 and § 553.

8.     Pursuant to Bankruptcy Code §§ 362, 363(e) and 364(c), as security for the PBGC Adequate Protection Claim, the Debtors are hereby authorized to and do grant to PBGC, acting on behalf of the Pension Plan, a valid, binding, enforceable and automatically perfected first priority lien and/or security interest in the Collateral (including the Post-Petition Collateral), subject and subordinate only to (a) the pre-petition and post-petition liens of Lender, and (b)

8

other liens existing as of the Petition Date that are valid, enforceable and not subject to avoidance by a trustee or the Committee under the Bankruptcy Code.

9.    Nothing in this order is intended to alter or impair the rights, obligations or relative priorities of Lender and PBGC under that certain Subordination Agreement dated February 22, 2010 among the Debtors, PBGC and Lender (the "Subordination Agreement").

10.    Notwithstanding the liens, mortgages and security interests of the PBGC and Lender under this order, the Collateral may be used by the Debtors, if sufficient unencumbered funds are not available from the Debtors' estates, to pay (collectively, the "Carve-Out"):

(a)    the statutory fees of the United States Trustee pursuant to 28 U.S.C. § 1930(a) and any unpaid fees due and owing to the Clerk of the Court;

(b)    the allowed and allowable fees and expenses of professionals retained and approved pursuant to final orders of the Court, by the Debtors in an aggregate amount not to exceed $545,800.00, exclusive of pre-petition retainers but inclusive of any "success fee" due to any such professional; and

(c)    the allowed and allowable fees and expenses of Professionals of the Official Committee of Unsecured Creditors (the "Committee"), and the reasonable expenses of members of the Committee (other than the fees and expenses of professionals employed by members of the Committee), in aggregate amount not to exceed $75,000.00;

Lender and PBGC shall have no Carve-Out obligations with respect to fees and expenses incurred in connection with any challenge to (and with respect to the Debtors' Professionals, challenge to and investigation of) the validity, extent, priority, perfection and enforceability of the liens, mortgages and security interests granted to (or arising by operation of law in favor of) Lender or PBGC by the Debtors prior to the Petition Date.  Lender or PBGC may in their

9

respective sole and absolute discretion establish a reserve under the Financing Arrangement or otherwise with respect to the Carve-Out obligations under this paragraph. All payments received by Professionals with respect to fees and expenses within the scope of the Carve-Out (exclusive of pre-petition retainers) shall reduce the respective Carve-Out on a dollar-for-dollar basis.

11.     The liens, mortgages and security interests granted to Lender hereunder to secure the Post-Petition Claim and to PBGC, acting on behalf of the Pension Plan, to secure the PBGC Adequate Protection Claim, shall not be subject to any lien, mortgage or security interest or any other interest which is avoided and which would otherwise be preserved for the benefit of the Debtors' estates under Bankruptcy Code § 551, and the liens, mortgages and security interests granted to Lender and PBGC hereunder, shall encumber and constitute a prior lien, mortgage and security interest in and to any lien, mortgage, security interest or interest which is avoided and which would otherwise be so preserved for the benefit of the Debtors' estates. Neither Lender nor PBGC shall be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any Collateral securing any of the Post-Petition Claim or the PBGC Adequate Protection Claim.

12.     The Debtors waive irrevocably all rights, if any, they might otherwise assert against the Collateral pursuant to Bankruptcy Code §§ 506(c) or 552(b); *provided however,* nothing herein or otherwise in this order shall waive any right of any subsequently appointed Chapter 7 trustee under Bankruptcy Code § 506(c).

13.     Except for and pursuant to the terms of the Carve-Out (and subject to the proviso set forth in paragraph 12 hereof), no entity in the course of these bankruptcy cases (whether Chapter 11 or subsequent Chapter 7), shall be permitted to recover from the Collateral (whether directly or through grant of derivative and/or equitable standing in the name of the Debtors

10

and/or the Debtors' estates) any cost or expense of preservation or disposition of the Collateral,

including, without limitation, expenses and charges as provided in Bankruptcy Code §§ 506(c) or

552(b) without the prior written consent of Lender or the PBGC. Except for the obligation to

fund the Carve-Out, no entity shall be permitted to recover from the Collateral, or assert against

Lender or the PBGC, any claim with respect to any unpaid administrative expense of the

Debtors' bankruptcy cases, unless as a payment of such administrative claim to the extent set

forth in the Budget.

14.     The Debtors shall not use Cash Collateral other than in accordance with the

provisions of paragraph "2" of this Order. So long as there are any Pre-Petition Obligations or

Post-Petition Obligations (collectively, the "Obligations") outstanding to Lender or any

outstanding Pension Obligations, unless while there are outstanding Obligations Lender and

PBGC shall have given their prior written consent (or after there are no longer any outstanding

Obligations, PBGC has given its prior written consent), or the Court enters an order, upon proper

notice to Lender and PBGC (or after there are no longer any outstanding Obligations, upon

proper notice to PBGC) and after a hearing, there shall not at any time be entered in the Debtors'

Chapter 11 cases any further orders which authorize: (a) under Bankruptcy Code § 363, the use

of Cash Collateral in which Lender or PBGC (acting on behalf of the Pension Plan) has an

interest, or the sale, use, or lease, other than in the ordinary course of business, of property of the

Debtors in which Lender or PBGC (acting on behalf of the Pension Plan) has an interest; (b) the

obtaining of credit or the incurring of indebtedness pursuant to Bankruptcy Code § 364(c) or

§ 364(d), or any other grant of rights against the Debtors and/or its estates, secured by a lien,

mortgage or security interest in the Collateral held by Lender or PBGC (acting on behalf of the

Pension Plan) or entitled to priority administrative status which is equal or superior to that

11

granted to Lender or PBGC (acting on behalf of the Pension Plan) herein; or (c) the return of goods by the Debtors pursuant to Bankruptcy Code § 546(h).

15.     Subject to Section 506(b), in addition to the fees, costs, charges and expenses authorized under the Pre-Petition Agreements, Lender shall be entitled to charge the Debtors' account or receive reimbursement thereof, in either case as Post-Petition Obligations, on ten (10) days written notice to the Noticed Parties (as such term is defined below) (the "Fee Notice"), but without application to the Court, for all of Lender's reasonable attorneys' and other professionals' fees arising from or related to (a) the Financing Arrangement, including without limitation the negotiating, closing, documenting and obtaining of Court approval thereof, (b) all proceedings in connection with any Disposition (as such term is defined below), (c) all proceedings in connection with the interpretation, amendment, modification, enforcement, enforceability, validity or carrying out of the Pre-Petition Agreements or this Order at any time, (d) all other matters and proceedings arising in or related to the Debtors' bankruptcy cases, and (e) all reasonable expenses, costs and charges in any way or respect arising in connection therewith or related thereto.  The Fee Notice shall be accompanied by copies of such professionals' invoices to Lender, subject to redaction against disclosure of privileged and/or confidential information, and such invoices shall be charged to the Debtors' account as provided for herein unless, prior to the expiration of the ten (10) day period, appropriate pleadings objecting thereto are filed with the Court and served upon Lender by any of the Noticed Parties.

16.     The Debtors, at their expense, shall continue to keep the Collateral fully insured against all loss, peril and hazard and make Lender, while there are outstanding Obligations, and thereafter PBGC, loss payee as its interests appear under such policies.  The Debtors shall pay any and all undisputed post-petition taxes, assessments and governmental charges included in the

12

Budget with respect to such collateral all as provided under the Pre-Petition Agreements or otherwise required by law. The Debtors shall provide Lender, while there are outstanding Obligations, and thereafter PBGC, with proof of the foregoing within three (3) business days of written demand and will give Lender, while there are outstanding Obligations, and thereafter PBGC, access to their records in this regard.

17.     The automatic stay provisions of Bankruptcy Code § 362 are hereby modified to permit (a) the Debtors to implement and perform the terms of the Financing Arrangement, and (b) the Debtors to create, and Lender or PBGC to perfect, any and all post-petition liens, mortgages and security interests granted hereunder. Neither Lender nor PBGC shall be required to file UCC financing statements or other instruments with any other filing authority to perfect any post-petition lien, mortgage or security interest granted by this Order or take any other action to perfect such post-petition liens, mortgages and security interests, which shall be deemed automatically perfected by the docket entry of this Order by the Clerk of the Court. If, however, Lender or PBGC shall, in their respective sole and absolute discretion, elect for any reason to file, record or serve any such financing statements or other documents with respect to such post-petition liens and security interests, the Debtors shall execute same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time of the commencement of the Debtors' Chapter 11 cases on the Petition Date.

18.     The time of payment of any and all Obligations of the Debtors to Lender arising out of or incurred pursuant to the Financing Arrangement shall not be altered, extended or impaired by any plan or plans of reorganization that may hereafter be accepted or confirmed or any further orders of the Court which may hereafter be entered, unless such order is entered after due notice to the Lender and a hearing or prior written consent of Lender is obtained.

13

19.     Each of the following shall constitute an "Event of Default" under this Order:

(a)     any of the Debtors' Chapter 11 cases is either dismissed or converted to a Chapter 7 case;

(b)     a trustee or an examiner with expanded powers is appointed in any of the Debtors' Chapter 11 cases;

(c)     [intentionally omitted];

(d)     the Debtors expend any funds or monies for any purpose other than those set forth on the Budget, provided that for the cumulative Budget periods which have occurred, the Debtors' actual cash disbursements may be up to $25,000 more than the cumulative budgeted amount for cash disbursements through the conclusion of such Budget periods, without such expenditures constituting an Event of Default;

(e)     the Pre-Petition Obligations and Post-Petition Obligations outstanding shall exceed $9,250,000;

(f)     this Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall, in the reasonable exercise of Lender's or PBGC's discretion, materially and adversely affect the rights of Lender or PBGC hereunder or shall materially and adversely affect the priority of any or all of Lender's or PBGC's claims, liens or security interests;

(g)     the occurrence subsequent to the Petition Date of an Event of Default under the Pre-Petition Agreements, other than any Event of Default occurring and/or existing solely because of (1) the commencement of the Bankruptcy Cases on the Petition Date or the Debtors' compliance with this Order; (2) the breach of any financial covenant set forth in the

14

Pre-Petition Agreements; and/or (3) a failure to meet any deadline set forth in forbearance agreements entered into between Lender and the Borrowers.

(h)     the occurrence of a material adverse change, as determined in the reasonable exercise of Lender's discretion while there are outstanding obligations and thereafter in the reasonable exercise of PBGC's discretion, in the value of the Collateral;

(i)     non-compliance or default by the Debtors with any of the terms and provisions of this Order; provided, however, that said non-compliance or default shall not be deemed an Event of Default if curable and cured by the Debtors within five (5) business days after notice of such non-compliance or default is given to the Debtors and the Committee by Lender while there are outstanding Obligations or by PBGC thereafter;

(j)     the Debtors fail to retain or continue retention of Blackman Kallick ("BK") as the Debtors' chief restructuring/financial advisor during the Debtors' Chapter 11 cases, or in the event that BK's retention is not approved by the Court or BK withdraws from the Debtors' Chapter 11 cases, the Debtors' fail to retain a chief restructuring/financial advisor acceptable to Lender in its reasonable discretion;

(k)     a closing with respect to a sale under Section 363 of the Bankruptcy Code in accordance with the Letter of Intent shall not have taken place by August 19, 2010.

20.     Upon the occurrence of an Event of Default and the giving of written notice thereof by facsimile or e-mail (the "Default Notice") by Lender (or after there are no longer any outstanding Obligations, by PBGC) to the Debtors', the Committee's and the United States Trustee's respective counsel (and, while are any outstanding Obligations, the PBGC) (the "Noticed Parties") and expiration of the cure period set forth in paragraph 19(i) above, or upon the occurrence of the Expiration Date (as such term is defined below):

NGEDOCS: 1729924.4

(a)     Lender shall have no further obligation to make loans, advances, and/or other financial accommodations to the Debtors;

(b)     Lender, while there are outstanding Obligations, and thereafter PBGC, shall have the right, free of the restrictions of Bankruptcy Code § 362 or under any other section of the Bankruptcy Code or applicable law or rule, to take immediate reasonable action to protect the Collateral from immediate harm, theft and/or dissipation;

(c)     the Debtors shall immediately segregate all of the Collateral, including without limitation Cash Collateral, and shall not be permitted to use such Collateral absent prior the written consent of Lender while there are outstanding Obligations and thereafter PBGC, except for payment of fees and expenses as contemplated in the Carve Out;

(d)     with respect to the Events of Default other than those specified in subparagraphs "(a)" through "(e)" of the preceding paragraph of this Order, the Noticed Parties shall have five (5) business days from the receipt of the Default Notice to cure the default (if curable) or obtain an order of the Court on notice to Lender while there are outstanding Obligations and thereafter to PBGC enjoining or restraining Lender or PBGC, as the case may be, from exercising its rights and remedies based upon the Event of Default specified in the Default Notice, provided that the sole grounds on which any of the Noticed Parties may seek a Restraint on Remedies shall be to allege either non-occurrence or timely cure of the Event of Default specified in the Default Notice;

(e)     payment of any and all Obligations of the Debtors to Lender arising out of or incurred pursuant to the Financing Arrangement and the Pension Obligations shall be due and payable, and Lender while the Obligations are outstanding (and thereafter PBGC) shall have the rights as set forth more fully herein to exercise its rights and remedies pursuant to the Financing

16

Arrangement and/or applicable law as to all or such part of the Collateral as Lender (and, after there are no longer any outstanding Obligations, PBGC), in its sole and absolute discretion, shall elect: (1) with respect to the Events of Default specified in subparagraphs "(a)" through "(e)" of the preceding paragraph of this Order, immediately upon the giving of the Default Notice; or (2) with respect to Events of Default other than those specified in subparagraphs "(a)" through "(e)" of the preceding paragraph of this Order, immediately upon expiration of the Remedy Notice Period unless a Restraint on Remedies has timely been obtained from the Court; or (3) upon the occurrence of the Expiration Date, immediately.

21.    The Debtors shall provide Lender, the PBGC and the Committee with such written reports, certified by an officer of the Debtors acceptable to Lender (and, after there are no longer any outstanding Obligations, acceptable to PBGC) to be accurate to the best of such officer's knowledge, information and belief, as are required under the Financing Arrangement, and such additional written reports as Lender (and, after there are no longer any outstanding Obligations, PBGC), in its reasonable discretion, shall require, including without limitation a report, no later than Tuesday of each week, showing the Debtors' actual cash receipts and disbursements for the prior week and the variances between such actual amounts and the amounts set forth in the Budget for such Budget period.

22.    Lender and PBGC shall have the right at any time during the Debtors' normal business hours, to inspect, audit, examine, check, make copies of or extracts from the books, accounts, checks, orders, invoices, bills of lading, correspondence and other records of the Debtors, and to inspect, audit and monitor all or any part of the Collateral, and the Debtors shall make all of same available to Lender, PBGC and the Committee and their respective representatives, for such purposes.

17

23.     The pre-petition clearing, dominion, lockbox and similar accounts maintained by
or on behalf of the Debtors pursuant to the Pre-Petition Agreements at certain banking
institutions for the collection of the proceeds of Lender's Collateral (including without limitation
receivables and other proceeds arising from the Debtors' sales of Inventory and/or performance
of services) in the ordinary course of the Debtors' businesses, and the payment procedures under
which such accounts are administered (collectively, the "Collection Accounts and Procedures"),
shall continue in full force and effect unless otherwise directed by Lender. Without limitation of
the foregoing, from and after the date of this Order, the Debtors shall remit to Lender such cash,
cash equivalents and checks as are proceeds of Lender's Collateral obtained in the ordinary
course of the Debtors' business to Lender, and/or shall cause customers and account Debtors of
the Debtors to remit such cash, cash equivalent and checks as are proceeds of Lenders'
Collateral, in accordance with the Collection Accounts and Procedures and in accordance with
the terms and conditions of the Pre-Petition Agreements.

24.     To the extent that as of the date of this Order, the Debtors maintain custody and/or
control of any cash, cash equivalents or checks, whether in its possession, in bank accounts, in
lockbox accounts or otherwise, and such cash, cash equivalents or checks are proceeds of
Lender's Collateral, upon entry of this Order the Debtors shall deliver such cash, cash
equivalents or checks, and the proceeds thereof, to Lender.

25.     Subject to Section 506(c)(1), the Debtors and any successor to the Debtors,
including without limitation any successor trustee or trustees, shall while the Obligations are
outstanding (a) assign or direct to Lender any and all payments, proceeds or other consideration
("Proceeds") realized upon the sale, liquidation, collection or disposition of the Collateral other
than in the ordinary course of the Debtors' businesses (a "Disposition"), including without

18

limitation the proceeds of sales authorized pursuant to Bankruptcy Code § 363 or any plan of reorganization, and (b) immediately deliver any and all Proceeds which come into their possession to Lender in the form received. In furtherance of the foregoing, subject to the provisions of paragraph 29 of this Order, neither the Debtors nor the Committee shall seek to cause the escrow of, enjoin Lender's receipt of, or otherwise withhold from Lender, any Proceeds of any Disposition, and any order of the Court authorizing a Disposition shall provide for Lender's receipt of Proceeds in accordance with the provisions of this paragraph.

26.    Lender is authorized to accrue interest and charge the Debtors' account therefor, and to apply remittances from the Debtors against interest, all as set forth pursuant to the Financing Arrangement, (a) on the outstanding balance of the Post-Petition Obligations, and (b) on the outstanding balance of the Pre-Petition Obligations to the extent permitted by the Bankruptcy Code. Any payment of interest on the Obligations will be allowed only pursuant to further orders of the Court.

27.    Lender is authorized, notwithstanding the provisions of Bankruptcy Code § 362, (a) to retain and apply the Proceeds of the Collateral to the repayment of the Post-Petition Claim, and (b) to retain and apply the Proceeds of the Pre-Petition Collateral to the repayment of the Pre-Petition Obligations. Such applications of the Proceeds shall be free and clear of any claim, charge, assessment or other liability including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, Bankruptcy Code §§ 506(c) or 552(b).

28.    Without prejudice to the rights of third parties to the extent set forth in the following paragraph of this Order, the validity, extent, priority, perfection and enforceability of Lender's and PBGC's pre-petition claims, liens, mortgages and security interests in the Debtors' assets shall not be subject to challenge by the Debtors, and in furtherance thereof the Debtors

19

hereby release, waive and affirmatively agree not to allege or otherwise pursue any or all defenses, affirmative defenses, counterclaims, claims, causes of action, recoupments, setoffs or other rights that it may have to contest (a) any Defaults or Events of Default (as defined in the Pre-Petition Agreements) which were or could have been declared by Lender as of the Petition Date, (b) any provisions of the Pre-Petition Agreements, (c) the amount of the Debtors' indebtedness to Lender as of the Petition Date or the amount of the Pre-Petition Pension Obligations as of the Petition Date, or (d) the conduct of Lender in administering the pre-petition business relationship between the Debtors and Lender, including without limitation "lender liability" and/or "deepening insolvency" claims and causes of action.

29.     Notwithstanding the Debtors' release and waiver set forth in the preceding paragraph of this Order, (a) the Committee shall have through and until September 30, 2010 to commence an adversary proceeding against Lender or PBGC for the purpose of challenging the validity, extent, priority, perfection and enforceability of Lender's or PBGC's pre-petition liens, mortgages and security interests in the Debtors' assets or to assert any other claims against Lender or PBGC. Any such person or entity, including without limitation the Committee, that fails to commence such an adversary proceeding or file such a motion, respectively, within the applicable time period shall be barred forever from doing so.

30.     Lender shall be entitled to the benefits and protections of this Order, including the protections afforded pursuant to Bankruptcy Code § 364(e), with respect to all loans, advances and/or financial accommodations made by Lender to or for the benefit of the Debtors pursuant to this Order.  PBGC shall be entitled to the benefits and protections of this Order, including the protections afforded pursuant to Bankruptcy Code § 364(e), with respect to all financial accommodations made by PBGC to or for the benefit of the Debtors pursuant to this Order.

20

Pursuant to the provisions of Bankruptcy Code § 364(e), the liens, mortgages and security interests granted under or ratified by this Order shall be binding on the Debtors or any successor trustee or trustees even if this Order is reversed or modified on appeal.

31.     The terms and conditions of this Order shall be: (a) immediately enforceable pursuant to Bankruptcy Rule 8005; and (b) not be stayed absent (1) an application by a party in interest for such stay in conformance with such Bankruptcy Rule 8005, and (2) a hearing upon notice to the Debtors, Lender, PBGC and the Committee.

32.     The provisions of this Order and any actions taken pursuant hereto shall survive entry of any orders which may be entered confirming any plan of reorganization or which may be entered converting these cases from Chapter 11 to Chapter 7 of the Bankruptcy Code.  The terms and provisions of this Order, as well as the claims, liens, mortgages and security interests granted by this Order, shall continue in this or any superseding case under the Bankruptcy Code and shall continue notwithstanding any dismissal of the Debtors' bankruptcy cases (and any such order of dismissal shall so provide), and such claims, liens, mortgages and security interests shall maintain their priority as provided by this Order until the Debtors' Obligations to Lender and the obligations to PBGC secured thereby are satisfied in full.

33.     The Financing Arrangement shall be in effect for the period commencing with the Petition Date through and including September 30, 2010 (the "Expiration Date") unless otherwise extended from time to time pursuant to a mutually acceptable Budget for such extension periods:  (a) as may be agreed to by Lender, PBGC, Debtors and the Committee, without further order of the Court, or (b) as may be agreed to by Lender (or, after there are no longer any outstanding Obligations, PBGC) and Debtors, and authorized by further order of the Court.

21

34.    To the extent that any of the provisions of this Order shall conflict with any of the

provisions of the Pre-Petition Agreements, this Order is deemed to control and shall supersede

the conflicting provision(s) in said agreement(s).

Dated:    Chicago, Illinois
          August 18, 2010

_____
Hon. Eugene R. Wedoff

NGEDOCS: 1729924.4

## EXHIBIT A

## PREPETITION AGREEMENTS

EXHIBIT B

BUDGET

115350/214-1901373.2
NGEDOCS: 1729924.4

| | 50,000 | 50,000 | 117,000 | 7,500 | 10,000 | 25,000 | 10,000 | |
| | | 8,175,000 | | | | | - | |
| | 50,000 | 8,225,000 | 117,000 | 7,500 | 10,000 | 25,000 | 10,000 | |

**...ements**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 558 | 558 | 558 | 558 | 279 | 279 | 279 | |
| | 22,276 | - | - | 14,058 | - | 7,613 | - | |
| ...und contributions | 5,916 | - | - | 4,116 | - | - | - | |
| ...Disbursements | 28,750 | 558 | 558 | 18,733 | 279 | 7,893 | 279 | |

**...sbursements**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ...ng | - | - | - | - | - | - | - | |
| | - | - | - | - | - | - | - | |
| | - | - | - | - | - | - | - | |
| | 2,500 | - | - | - | - | - | - | |
| ...sements | 2,500 | - | - | - | - | - | - | |

**...ts**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ...fuel | - | - | - | - | - | - | - | |
| ...ice supplies | 1,000 | - | - | - | - | - | - | |
| | - | - | 500 | 500 | - | - | - | |
| | 12,500 | - | - | - | 11,500 | - | - | |
| | 250 | - | - | - | 1,500 | - | - | |
| | - | - | - | - | - | - | - | |
| | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | |
| | - | 5,000 | 31,000 | - | - | - | - | |
| | 5,000 | 2,500 | 2,500 | 1,000 | 1,000 | 1,000 | 1,000 | |
| ...ursements | 20,000 | 8,750 | 35,250 | 2,750 | 15,250 | 2,250 | 2,250 | |

**...rating Disbursements**

| | 22,500 | 8,750 | 35,250 | 2,750 | 15,250 | 2,250 | 2,250 | |
|---|---|---|---|---|---|---|---|---|

**...ents**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 2,500 | - | - | - | - | - | - | |
| | - | 750 | - | 23,100 | - | 750 | - | |
| ...sbursements | 2,500 | 750 | - | 23,100 | - | 750 | - | |

**...nents**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | - | - | - | 23,000 | - | - | - | 8 |
| | - | - | - | 75,000 | - | - | - | 10 |
| | - | 261,300 | - | - | - | - | - | |
| | - | - | - | 40,000 | - | - | - | 3 |
| | - | - | - | 52,500 | - | - | - | 4 |
| ...s | - | 1,500 | - | - | - | - | - | |
| | - | - | - | - | - | - | - | |
| | - | - | - | - | - | - | - | |
| ...isbursements | - | 262,800 | - | 190,500 | - | - | - | 26 |
| | 53,750 | 272,858 | 35,808 | 235,083 | 15,529 | 10,893 | 2,529 | 26 |
| | $ (3,750) | $ 7,952,142 | $ 81,192 | $ (227,583) | $ (5,529) | $ 14,107 | $ 7,471 | $ (25 |

**...ine of Credit**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ...nce | $ (9,187,678) | $ (9,191,428) | $ (1,239,287) | $ (1,158,095) | $ (1,385,678) | $ (1,391,207) | $ (1,377,100) | $ (1,36 |
| | 50,000 | 8,225,000 | 117,000 | 7,500 | 10,000 | 25,000 | 10,000 | 1 |
| ...rsements | (53,750) | (272,858) | (35,808) | (235,083) | (15,529) | (10,893) | (2,529) | (26 |
| | $ (9,191,428) | $ (1,239,287) | $ (1,158,095) | $ (1,385,678) | $ (1,391,207) | $ (1,377,100) | $ (1,369,629) | $ (1,62 |